RIPPLE, Circuit Judge,
concurring:
I concur in the judgment because faithful adherence to the doctrines of stare decisis and precedent requires me to do so. I write separately because this case presents an important issue of First Amendment jurisprudence, which the Supreme Court explicitly reserved in Christian Legal Society v. Martinez, — U.S. -, 130 S.Ct. 2971, 2984 & n. 10, 177 L.Ed.2d 838 (2010). Although this circuit has answered this question in Truth v. Kent School District, 542 F.3d 634, 645-47 (9th Cir.2008), it is still an open question at the national level. Here, the factual ambiguities that prompt this court to remand to the district court may dilute the focus of the constitutional question, at least momentarily; nevertheless, it may well be that, at some later point, this case will be an appropriate case for further Supreme Court review.
As the majority points out, this case is not controlled by the majority opinion in Christian Legal Society; SDSU has not conditioned official recognition of clubs on an organization’s adopting an “all-comers” policy. See Op. at 795. Rather, it has required that organizations not discriminate in membership or leadership on specified grounds: “race, sex, color, age, religion, national origin, marital status, sexual orientation, physical or mental handicap, ancestry, or medical condition.” ER 87 ¶ 18. Under this policy, most clubs can limit their membership to those who share a common purpose or view: Vegan students, who believe that the institution is not accommodating adequately their dietary preferences, may form a student group restricted to vegans and, under the policy, gain official recognition. Clubs whose memberships are defined by issues involving “protected” categories, however, are required to welcome into their ranks and leadership those who do not share the group’s perspective: Homosexual students, who have suffered discrimination or ostracism, may not both limit their membership to homosexuals and enjoy the benefits of official recognition. The policy dilutes the ability of students who fall into “protected” categories to band together for mutual support and discourse.
For many groups, the intrusive burden established by this requirement can be assuaged partially by defining the group or membership to include those who, although they do not share the dominant, immutable characteristic, otherwise sympathize with the group’s views. Most groups dedicated to forwarding the rights of a “protected” group are able to couch *806 their membership requirements in terms of shared beliefs, as opposed to shared status. Opponents of violence against women could limit their membership to all individuals dedicated to eradicating physical, mental or emotional abuse against female domestic partners. A gay, lesbian and transgender students group could limit their membership to all individuals dedicated to achieving equal political and social recognition of gay, lesbian and transgender persons.
Religious students, however, do not have this luxury — their shared beliefs coincide with their shared status. They cannot otherwise define themselves and not run afoul of the nondiscrimination policy. See Truth, 542 F.3d at 645 (“Even assuming that non-Christians would be able to comply with Truth’s view of ‘Christian character, Christian speech, Christian behavior and Christian conduct,’ we hold that the requirement that members possess a ‘true desire to ... grow in a relationship with Jesus Christ’ inherently excludes non-Christians.”). The Catholic Newman Center cannot restrict its leadership — those who organize and lead weekly worship services — to members in good standing of the Catholic Church without violating the policy. Groups whose main purpose is to engage in the exercise of religious freedoms do not possess the same means of accommodating the heavy hand of the State.
The net result of this selective policy is therefore to marginalize in the life of the institution those activities, practices and discourses that are religiously based. While those who espouse other causes may control their membership and come together for mutual support, others, including those exercising one of our most fundamental liberties — -the right to free exercise of one’s religion — cannot, at least on equal terms.
On this basis, I concur in the judgment of the court.